
**FILED**

**December 18, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 11:08 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| **Jerry Booher** | ) | **Docket No.: 2015-02-0298** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 31904/2015** |
| **Microporous, LLC** | ) | |
| **Employer,** | ) | **Judge Brian K. Addington** |
| **And** | ) | |
| **Liberty Mutual Insurance Co.** | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED
## TEMPORARY DISABILITY BENEFITS

This cause came on to be heard on December 7, 2015, for an Expedited Hearing. The present focus of this case concerns the employee's positive urine drug screen (UDS), which was performed on the date of injury after he slipped in oil and injured his low back. The central legal issue is whether the employee is entitled to additional temporary disability benefits from the date of injury to the date he reached maximum medical improvement, considering his termination, which resulted from the UDS failure.[1] For the reasons set forth below, the Court denies the requested relief at this time.

### History of Claim

Jerry Booher is a twenty-nine-year-old resident of Sullivan County, Tennessee. (T.R. 1 at 1.) He worked for Microporous, LLC as a calendar and Flexsil operator. (Ex. 3 at 5.) The parties stipulated that Mr. Booher's average weekly wage is $686.32. Mr. Booher testified that his shift started at 4:00 p.m., and his job consisted of making rubber separators that fit between the cells of golf cart batteries.

On April 23, 2015, as Mr. Booher stepped toward an extruder machine to begin his work, he slipped in oil that had spilled onto the floor after the maintenance department replaced a screw on the extruder. (Ex. 1.) Mr. Booher fell onto a sharp corner

---

[1] Additional information regarding the certified issues, technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

1

of the machine, hitting his lower back. *Id.* He also struck his left knee on the corner of the concrete floor. *Id.* The plant manager, Travis Cunningham, was five feet away from Mr. Booher when the accident occurred. *Id.*

Mr. Booher testified that he felt a sharp pain in his left leg, as well as numbness and tingling in his lower back after the fall. He attempted to work for another two hours, but his discomfort continued. He completed an incident report and requested medical treatment. (Ex. 3 at 5.) Microporous presented Mr. Booher with its standard physician panel, and, given the hour, Mr. Booher elected to treat at the Franklin Woods Hospital emergency room. (Ex. 3 at 6.) Another supervisor named "Curtis" drove Mr. Booher to the emergency room, where he met the Environmental Health and Safety Manager, Steve Powell.

At Franklin Woods, Mr. Booher underwent a CT scan of lumbar spine. The treating physician diagnosed him with back and left knee pain. A UDS was administered. Mr. Booher previously signed a Consent for Drug Testing form for Microporous when he became a full-time employee on January 22, 2015. (Ex. 3 at 1.) The Franklin Woods providers recorded in two separate notes that Mr. Booher asked a CT technician named "Brad" to provide a urine sample and substitute it for his sample. Ivy Adkisson, the nurse taking care of Mr. Booher, recorded:

> Brad from CT returned patient to ED 14. Brad states that patient offered him one hundred dollars cash to "pee" for him for his medworks UDS. Brad, of course, declined and reported it to myself. I confronted patient and gave him the option to continue with drug screen or decline. Patient wishes to continue with UDS.

(Ex. 3 at 3.)

The physician attending to Mr. Booher prepared a handwritten notation stating, "Patient was reported to have asked CT tech to pee in a cup for him." (Ex. 3 at 2.) The remainder of the note is illegible. Mr. Booher was prescribed pain medication and was discharged home. The UDS later returned positive for Oxaazepam, Alprazolam, and marijuana. (Ex. 3 at 8.)

The provider discharged Mr. Booher with medication and allowed him to return to work the next Monday, April 27, 2015, with no restrictions. (Ex. 3 at 17.)

Mr. Booher requested additional medical treatment and chose WellWorks Occupational Health Services from the provided panel. (Ex. 3 at 6.) Dr. E.C. Goulding examined Mr. Booher on April 27, 2015. (Ex. 3 at 18.) He diagnosed Mr. Booher with a lumbar strain and left sciatica and restricted Mr. Booher's work to "no lifting, pushing, or pulling over 20 pounds," and "no repetitive or prolonged forward bending, twisting . . .

2

kneeling, squatting, or climbing." *Id.*

Mr. Booher returned to WellWorks the next day. (Ex. 2 at 1.) Dr. Goulding adjusted Mr. Booher's restrictions to a five-pound lifting, pushing, or pulling restriction, and no repetitive or prolonged forward bending or twisting. *Id.* Mr. Booher was limited to working four hours per day and was required to perform a "sitting job only. Chair with back support." *Id.*

Dr. Goulding referred Mr. Booher to a back surgeon for evaluation, and Microporous responded by providing a panel from which Mr. Booher selected Dr. Richard Duncan. (Ex. 3 at 7.) Dr. Duncan examined Mr. Booher on April 30, 2015. (Ex. 2 at 2.) Mr. Booher reported pain in his low back with numbness down his left leg. *Id.* Dr. Duncan noted Mr. Booher's previous lumbar surgery in 2007 to correct "lumbar disc problems, but [he] was back doing his regular duty in an unrestricted fashion when he had this recent injury." (Ex. 2 at 4.) Lumbar x-rays showed "slight decreased height at the L4-L5 and L5-S1 disc, which can be normal variant at his stated age of 28." Dr. Duncan diagnosed Mr. Booher with displacement of the lumbar intervertebral disc without myelopathy. *Id.* He ordered physical therapy and restricted Mr. Booher to no more than four hours of work per day, no lifting over five pounds, and no bending at the waist. *Id.*

On May 1, 2015, the results of Mr. Booher's April 23, 2015 UDS became available. (Ex. 3 at 8.) Mr. Booher testified that he received a phone call confirming the results that same day. He contested the positive UDS and procured another UDS at his expense that afternoon. On May 8, 2015, the results of the second UDS returned negative. (Ex. 2 at 10.) Microporous received notice of the earlier positive UDS and suspended Mr. Booher on May 4, 2015.

Microporous' Director of Human Resources, Robert Miller, testified at the hearing. He asserted that the company abided by all work restrictions given to Mr. Booher and that it would have continued to accommodate his restrictions, if not for Mr. Booher's suspension and ultimate termination.

Before Mr. Booher received the results of the second UDS, Microporous terminated his employment via correspondence dated May 6, 2015, after it received written confirmation of the positive UDS. (Ex. 3 at 15.) In support of the termination, Microporous cited its policy subjecting employees to termination for "possession of intoxicants or controlled drugs on company property or reporting to work under the influence of alcohol or with a measurable quantity of a narcotic in the employee's system." *Id.*

The Court also notes Microporous' Drug Policy, which states, "It is a violation of company policy for any employee to report to work under the influence of or while possessing in his/her body, blood, or urine, illegal drugs in any detectable amount . . .

3

Violations of this policy are subject to disciplinary action up to and including termination." (Ex. 3 at 10, 11.) A Separation Notice accompanied the letter and indicated discharge for a failed drug test. (Ex. 3 at 16.)

Upon his return visit to Dr. Duncan on May 12, 2015, Mr. Booher reported no improvement in his condition. (Ex. 2 at 6.) Dr. Duncan concluded that Mr. Booher was not a surgical candidate. (Ex. 2 at 8.) He ordered an MRI of the lumbar spine in light of Mr. Booher's left leg pain. *Id.*

Dr. Duncan reviewed the MRI results and noted "degenerative changes at L4-L5 and L5-S1 with decreased disc space and disc bulges were seen at L4-L5." (Ex. 3 at 4.) He confirmed that Mr. Booher was not a surgical candidate, but ordered a nerve root injection at L5. *Id.*

Mr. Booher testified that he was anxious about the steroid injection procedure and was confused about the appointments made in August 2015. He understood that the appointments were optional, if he wished to proceed with the injections. Since he was not convinced he wanted the injections, he did not attend.

Mr. Booher returned to Dr. Duncan on October 16, 2015. (Ex. 4 at 1.) Dr. Duncan placed him at maximum medial improvement (MMI) and issued a three percent impairment rating to the body as a whole, noting "I have nothing further I can offer him for an orthopedic spinal surgery perspective." (Ex. 4 at 2.)

Mr. Booher testified that he received "one month" of temporary disability benefits until Dr. Duncan put him on restrictions during his second visit. He also denied smoking marijuana and maintained that he had never heard of the medications for which he allegedly tested positive in the original UDS. He asserted that he took no prescription medication on the date of injury. In addition, Mr. Booher testified that he began working for a different employer, Johnson City Toyota, as a car salesman approximately three weeks before the expedited hearing. He will receive training pay for his first two months at the rate of $750 per week before moving to a full commission-based pay. He has not yet received his first paycheck.

Mr. Booher also asserted that he did not receive a mileage reimbursement check owed by Microporous. Microporous acknowledged that the mileage payment is owed and will ensure payment.

Mr. Booher filed a Petition for Benefit Determination seeking additional medical and temporary disability benefits on August 26, 2015. (T.R. 1 at 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on September 25, 2015. (T.R. 2.) Mr. Booher filed a Request for Expedited Hearing pursuant to Tennessee Code Annotated section 50-6-239 (2014).

4

(T.R. 3.) At the Expedited hearing, Mr. Booher contended that he is entitled to temporary disability benefits from the date of injury to the MMI date. Mr. Booher does not request medical treatment. Microporous asserts that it owes no further temporary disability benefits, and that it appropriately terminated Mr. Booher appropriately and for cause.

**Findings of Facts and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party, but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

The Court finds that Microporous provided sufficient information to establish its policy prohibiting an employee from reporting to work "possessing in his/her body, blood, or urine, illegal drugs in any detectable amount." Employees who do are subject to discipline, including termination. Mr. Booher does not contest the policy.

The facts established that on the date of injury, Mr. Booher's UDS showed positive for an illegal drug, marijuana, among other substances. While Mr. Booher contests the positive UDS result, the fact remains that, when presented with a positive UDS, Microporous followed the plain language of its Drug Policy and first suspended and later terminated Mr. Booher's employment.

Moreover, the Court cannot ignore the CT technician's report, recorded twice in the submitted medical records, that Mr. Booher offered him money to substitute his urine for Mr. Booher's. The Court finds that the documented proof of the offer outweighs Mr. Booher's denial that he made such an offer. The fact that Mr. Booher asked the CT technician to fraudulently submit his urine supports the veracity of the positive UDS result. Moreover, even if the subsequent negative UDS result is correct, it has no impact on whether Mr. Booher had the noted drugs in his system on the date of injury. The Court finds that Microporous terminated Mr. Booher's employment for cause, specifically, for violation of its Drug Policy.

The question then becomes whether Mr. Booher is entitled to temporary partial disability benefits. The facts established that Mr. Booher returned to work for Microporous after the injury, initially without restrictions, and later with restrictions. According to Mr. Booher's testimony, he received some unspecified amount of temporary disability benefits for approximately one month. Nothing in the provided information suggests that Mr. Booher was entitled to any additional temporary disability benefits prior to his suspension on May 4, 2015.

Mr. Booher claims that he is entitled to temporary partial disability benefits up to his uncontested MMI date. However, the Tennessee Supreme Court has held that "an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case." *Carter v. First Source Furniture Group*, 92 S.W.3d 367, 371 (Tenn. 1992); *Jones v. Crencor Leasing and Sales*, 2015 Tn Wrk. Comp. App. Bd. LEXIS 48, at *8 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015

As noted above, Microporous acted within the terms of its Drug Policy when it suspended, and later terminated Mr. Booher's employment. In so doing, it enforced its workplace rules. In addition, the Court finds that Microporous had work available within Mr. Booher's restrictions both before and after his suspension and later termination. But-for Mr. Booher's termination for violation of company policy, he would have continued working. Mr. Booher was not disabled from working as a result of the injury, but as the result of his violation of company policy. His for-cause termination led to his inability to work for Microporous. In any event, Mr. Booher's entitlement to temporary partial disability benefits ended upon his placement by Dr. Duncan at MMI.

The Court finds that Mr. Booher has not come forward with sufficient evidence from which this Court could conclude that he is likely to prevail at a hearing on the merits. His request for additional temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Booher's claim against Microporous and its workers' compensation carrier for the additional temporary disability benefits is denied.

2. Microporous shall pay to Mr. Booher the mileage reimbursement it agreed is owed.

3. This matter is set for an Initial Status Hearing on January 21, 2016, at 2:00 p.m. Eastern Time.

**ENTERED this the 18th day of December, 2015.**

6

_(signature)_

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Initial (Status) Hearing:

A Status Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call at 855-543-5044 to participate in the Initial Hearing.**

**Please Note:** You must call in on the scheduled date/time to participate. **Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

7

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Affidavit of Jerry Booher, September 3, 2015
2. Collective Exhibit, including medical records from WellWorks and Dr. Duncan, and the May 1, 2015 UDS
3. Collective Exhibit, including emergency room records, additional WellWorks records and Dr. Duncan's records, the April 23-24, 2015 UDS, and personnel records
4. Dr. Duncan's October 16, 2015 record

Technical record: [2]

1. Petition for Benefit Determination, August 26, 2015
2. Dispute Certification Notice, September 25, 2015
3. Request for Expedited Hearing, October 14, 2015

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Additional Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 18th day of December, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Dan Bieger, Employee's Counsel | | | | | x | dan@biegerlaw.com |
| Eric Shen, Employer/Carrier's Counsel | | | | | x | eric.shen@libertymutual.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9